10 N.Y.3d 879 (2008)
890 N.E.2d 875
860 N.Y.S.2d 760
In the Matter of SEASIA D. MR. ANONYMOUS et al., Appellants; KAREEM W., Respondent.
TENISHA D., Nonparty Respondent.
Court of Appeals of the State of New York.
Decided June 3, 2008.
Deanna Balahtsis, New York City, for Mr. Anonymous and another, appellants.
Magovern & Sclafani, New York City (Frederick J. Magovern of counsel), for Family Focus Adoption Services, Inc., appellant.
Janet L. Brown, Jamaica, for Kareem W., respondent.
Shafter & Shafter, Port Washington (Allan D. Shafter of counsel), Law Guardian for Tenisha D., nonparty respondent.
Toba Beth Stutz, Jamaica, Law Guardian for Seasia D.
*880 Aaron Britvan, Woodbury, for Adoptive Parents Committee, Inc., amicus curiae.
Chief Judge KAYE and Judges CIPARICK, GRAFFEO, READ, SMITH, PIGOTT and JONES concur in memorandum.

OPINION OF THE COURT
MEMORANDUM.
The order of the Appellate Division should be reversed, without costs, the adoption petition reinstated and the matter remitted to Family Court for further proceedings on the petition in accordance with this memorandum.
In this contested adoption proceeding, Mr. and Mrs. Anonymous filed a petition in Family Court to adopt Seasia, a child born out of wedlock on April 1, 2004 to a 14-year-old mother. We must decide in this appeal whether there is legally sufficient evidence to support Family Court's findings, affirmed by the Appellate Division, that the extrajudicial surrender by the birth mother was invalid, and that the biological father, who intervened in the adoption proceeding, met the criteria for consent. We conclude that there is not legally sufficient evidence to support either of these findings.
First, we do not find record support for the trial judge's determination that the birth mother surrendered Seasia under duress. Tellingly, the birth mother never claimed she was forced to surrender Seasia, did not ask the court to void her extrajudicial consent and was prepared to consent anew. The birth mother has always supported and continues to support Seasia's adoption by Mr. and Mrs. Anonymous.
Nor do we find record support for the trial judge's determination that the biological father is a consent father. For the biological father's consent to be required before an adoption may proceed, he "not only must assert his interest promptly (bearing in mind the child's need for early permanence and stability) but also must manifest his ability and willingness to assume custody" during the six months prior to the child's placement (Matter of Raquel Marie X., 76 NY2d 387, 402 [1990]; see also Domestic Relations Law § 111 [1] [e]). "The . . . judicial evaluation of the unwed father's conduct in this key period may include such considerations as his public acknowledgment of paternity, payment of pregnancy and birth expenses, steps taken to establish legal responsibility for the child, and other factors evincing a commitment to the child" (id. at 408).
Here, the biological father learned of the birth mother's pregnancy in November 2003, and Seasia was adopted on April 5, 2004. During this crucial six-month period, the biological *881 father, who was 17 years old when Seasia was born, met none of the criteria set out in Matter of Raquel Marie X. Instead, the record is replete with excuses for his paternal lapsesi.e., the birth mother (who was 13 when Seasia was conceived and who has consistently maintained that her sexual contact with the biological father was not consensual) and her family were hostile toward him; he relocated to Maryland with his family; he was unaware of the Putative Father Registry maintained by the New York State Department of Social Services; court officials led him to believe that he could not commence a paternity suit until after the child's birth; the birth mother's medical expenses were paid for by Medicaid and, in any event, he was attending high school and was not employed. Finally, assuming without deciding that actions taken by a biological father's family may be attributed to him for purposes of establishing his status as a consent father, the family's gestures in this case (an offer to take the birth mother shopping for maternity clothes and certain telephone calls) were insubstantial.
On review of submissions pursuant to section 500.11 of the Rules of the Court of Appeals (22 NYCRR 500.11), order reversed, etc.